Case number 21-5858, Landmark American Insurance Company v. Heco Realty LLC et al. Oral argument, 15 minutes per side. Ms. Geruso for the appellant. If you wish to remove your mask while you're arguing, you may, but you may keep it on if you wish. Thank you, Your Honor. Good morning, Your Honors. Katherine Geruso for Appellant, Liberty Mutual Fire Insurance Company. I want to start with just a quick lay of the land. This matter involves a priority dispute between two commercial property insurers, Liberty Mutual and Landmark American Insurance Company. Both insurers issued policies covering the same industrial property in Dyersburg, Tennessee, and that property was leased by Heco Realty to Heckthorne Manufacturing. Landmark's policy was issued to Heco, the lessor, and Liberty Mutual's was issued to Heckthorne, the lessee, and it also covered Heco as an additional insured. Both insurers significantly charged equal premiums for their policies. Both of the premiums were roughly $70,000. After Heckthorne went out of business in April 2019, a third party having no connection to Heckthorne removed electrical and copper wiring and other business components and caused severe damage to the property. After that occurred, Heco submitted claims under both policies for the loss, which Heco claimed totaled more than $2 million. At that point, Liberty Mutual stepped up and negotiated with Heco and settled the claim for $1.67 million, and Landmark refused to pay. Instead, Landmark filed this lawsuit against Liberty, seeking a declaratory judgment that Liberty owes the full claim and it owes nothing. Landmark claims its policy is excess of Liberty Mutual's, and so Liberty is solely liable for the loss. Although Tennessee law mandates that the insurance policy language should govern the insurer's obligation, Landmark's obligation is wholly untethered from the policies. I take it your argument assumes that the lease really has no relevance to the dispute? Yes, your honor, I would agree with that. Why is that? Why shouldn't the lease have some bearing here? Your honor, in interpreting insurance policies, the court's task is to determine the intent of the parties to that policy. The parties to the insurance policies here are the insurance companies, Liberty Mutual and Landmark, and they're insured. Do you think the knowledge of the insurer should have any relevance, knowledge of the lease and what its terms are? Should that have any relevance to our resolution of the dispute? Your honor, I think the starting point should be the language of the policies and the other insurance clauses. Let's suppose it does have some relevance. What is the evidence here of what the insurers knew about the lease and its terms? There's no evidence in the record, your honor. We attempted to do discovery of the underwriting and it was denied and we were not able to move forward with a motion to compel on that point. At this point, your honors, there's no evidence in the record at all of the insurer's knowledge of the underlying lease. Counsel, if you play it out, and I think this is one of the rationales for courts that look at the lease. So you're insured, had responsibility under the lease. So let's say, when the insurance company steps into the shoes of the insured, it has subrogated to the rights and Liberty, I'm sorry, Landmark having paid its insured could then step into its shoes and pursue its rights against the other party and it would just come full circle, wouldn't it? Then Liberty would have to indemnify its insured against Landmark's claim and would end up paying the whole loss anyway. Your honor, I think that what you're getting at points to an important distinction between property insurance and commercial general liability insurance. The reasoning of the two district court opinions followed the Wal-Mart stores case, which was an 8th Circuit opinion and that case involved commercial general liability insurance, unlike this case, which involves property insurance. In the commercial general liability insurance context, it is a common term, almost a universal term of CGL policies that the insurer covers the insured's contractual liability assumed in an indemnity agreement. There's an exclusion in a CGL policy for contractual liability, but there's an exception to that exclusion for an insured contract. An insured contract is a contract that the insured enters into to indemnify a third party. There is a relationship, a direct relationship, between the insurance policy, the CGL policy, and the insured's underlying indemnity agreement. The Wal-Mart stores court focused on that feature of the CGL policy. As your honor has indicated, part of the reasoning in that case was that to not look to the underlying agreement would lead to circuitous litigation because the insurer ultimately insured the insured's undertaking to indemnify. Is that not true also of property insurance? No, your honor. There is no undertaking in the property insurance policy. The insurer does not undertake to cover in any way the insured's indemnity agreement or underlying assumption of responsibility in the lease agreement. Do you agree that the two provisions in the landmark and liberty policies are essentially irreconcilable? Your honor, I do not. We have argued, and there is a new case from the Tennessee Courts of Appeal that came out after the district courts. That's the Sentry case? Yes, your honor, the Sentry case. Do you think that the Sentry case is on all fours with the facts of this case? Yes, your honor, I do. It again was two property insurance policies covering the same property and the two other insurance clauses at issue. One of them is word for word identical to landmark's policy. Landmark and Sentry policy? Yes, exactly. Isn't the liberty policy different from the farmer's policy? Not in any relevant way, your honor. Now landmark has argued that it is different because the farmer's policy had a sentence that says, however if other insurance is specifically written as excess insurance over the insurance provided by this endorsement, the limits of this insurance shall apply first. That sentence is completely irrelevant, your honor, because no party contends that landmark's policy was specifically written as excess insurance over liberty's insurance. And in all other ways, the two policies are effectively, or the two other insurance clauses are effectively identical. So I don't think there is a basis for distinguishing the farmer's policy's other insurance language from the liberty policy's. And the Sentry case is unpublished in court of appeals. Is there any indication that the Tennessee Supreme Court would adopt that? Well, your honor, I think the period for appealing to the Tennessee Supreme Court has now passed is my understanding. I don't know if the period for requesting that the opinion be published has passed. I looked into that and was not able to determine one way or the other. But in any event, it's the court's task, as your honors well know, to determine what the Tennessee Supreme Court would do. And I think the Sentry case is at least persuasive authority as to what the Tennessee Supreme Court would do. If we thought that the two policies were inherently irreconcilable and distinguish this from Sentry, what should we do then under your view? In that case, your honor, there's a line of cases from the Tennessee Supreme Court that would counsel the court to prorate the loss between the two insurers, each of which accepted roughly equal premiums to insure the same property. And those cases are the USAA v. Hartford case, the Continental case, and also, I thought the district court didn't follow this binding authority from the Tennessee Supreme Court because it reasoned that the cases were superseded by a statute that concerned only auto liability insurance. So has the Tennessee Supreme Court re-endorsed its position after that statute having to do with automobile insurance? The Tennessee Supreme Court has not, however, the Sentry Court, the intermediate court did recite the rule that in the event that the policies are mutually repugnant, that what a court should do is prorate the loss. Now the Sentry Court didn't get to that point because it found the clauses could be harmonized, but it did recite the rule. The only basis Liberty is arguing for not covering the loss here is that the landmark policy exists. Is that correct? Yes, that's correct. So in other words, if the landlord had not taken out the policy, Liberty would have paid on this loss? Yes, and we have paid on the loss. And that occurred so that the Liberty policy was in place first, then the landmark policy came. Correct? Yes, that's correct, Your Honor. But again, it doesn't seem equitable to me that you would assume a risk and then now you're essentially claiming a windfall later by virtue of the fact that the landlord took out another policy. Your Honor, I think... That works, from an equitable standpoint at least. Your Honor, I think Landmark is the one who's not paid the loss here, and they accepted a $70,000 premium to cover the property, the same premium that Liberty did. But Liberty didn't pay Landmark any money for Landmark assuming that risk, did it? No, they did not. Does the policy exclude liability assumed by contract? No, there's no term like that in the property insurance policy, it just does not address or refer to or in any way incorporate the underlying lease, unlike a CGL policy that does incorporate the insurance obligations in an underlying indemnity agreement. Thank you. Thank you. Thank you. Good morning, Your Honors. Mike Johnson for Landmark Insurance Company. And you also may choose to leave your desk if you wish. I will gladly take off the mask. There's a lot of cases that I would throw out to the Court supports the District Court's Forest Planner's Gin from the Tennessee Supreme Court in 2002 that expressly said that commercial contracts are to be honored and allocation of insurance are to be respected. That Supreme Court case from the Court of Tennessee combined with the Tennessee Auto Statute 56-7-1101, which states with regard to automobile insurance that where a lessee has contracted to be responsible for insurance, it will always be the primary carrier regardless of the cover of the lessor's policy. That statute just applies to automobiles, right? As I said, it applies to automobiles, but it is an indication of the legislature. Every court that's looked at it says it's an indication of what would be acceptable by the Tennessee Supreme Court. Combine that with Planner's Gin decision in 2002, then you have the foundation that says we have one of two paths to go. One is the RBP, Western District 2006 decision, which says we're not going to completely allow the underlying contract between the parties to control with regard to the allocation of insurance. We're going to look to the other insurance clause, see if they're mutually repugnant. If they are, we will then look to the terms of the policy. That is contrasted to the Fireman's Fund decision, Middle District of Tennessee 2016, that said no. In accord with Planner's Gin, you follow the underlying contractual intents of the parties with regard to the allocation of risk. Here the lease expressly said that 100% of the insurance obligations on this property are to be borne by the insured. In fact, for 15 years, nearly 15 years, 100% of the insurance was carried by the insured. Is there anything in the record of the lease having been provided to Landmark before it offered the insurance or wrote through insurance? The distinction with Landmark is that it was requested solely by the owner after there was a financial fear of insolvency of the tenant and therefore its failure to procure insurance that they wanted to procure insurance for Landmark as a stat guy. Landmark issued only a policy to HECO. It did not insure the tenant in any form or fashion, as contrasted to the decades of insurance that were provided by the tenant. So the question was, what did it know about the lease? What did Landmark know about the lease when it extended the insurance? As an owner seeking insurance on commercial lease property, I don't believe it knew about the individual terms of the lease. But it was. It knew there was a lease. It was commercial property that was leased. And that is reflected. And the exact opposite is reflected with regard to the insurance procured by the tenant. They had, per the lease, to provide a certificate of insurance showing that the owner or the landlord was insured at all times under their lease. And so you have. Was Landmark aware of the Liberty Mutual insurance at the time it extended the insurance? I would tell you that it would be very unusual that any property carrier investigates whether the tenant is carrying insurance, and if so, what is the tenant's. So there is no evidence that Landmark knew that Liberty Mutual policy existed at the time it issued its insurance? As far as I know, no. Not in the record. So a question. I suppose a question is whether there is anything that further discovery would reveal that would be relevant to this case? Well, in the record, you have the insurer testifying as to why it bought the Landmark insurance and what it expected at all times from the underlying insurance. So we have the record that clearly says, Landlord expects, per the lease, for the insurer to carry all risks for this property. And to prevent, the lease says expressly, prevent the landlord from becoming a co-insured in any regard as regards to the losses covered by the tenant's policy. That language is in the record. We have the testimony in the record that why they bought it, because of the insolvency that they had never carried insurance ever before in the history of the property. Is there any evidence that that reason was communicated to Landmark when it extended the insurance? No. Obviously we know why the landlord bought it, but there is nothing to say why they told the insurer why. Nothing is in the record. What's in the record are the contracts between the parties that designate how the insurance is to be allocated, the risk, and who is to bear the risk. And there is evidence as to the property insurance being procured by the tenants in accordance with the lease. But your argument is predicated, it seems like, on this lease being relevant to our resolution of the property. Absolutely. I don't understand how the lease can be relevant if there is nothing in the record that either side, either insurer, knew what the lease said. How can parties be somehow bound by terms of which neither had any knowledge? All I can tell you is, having done this for 40 years, the insurance industry recognizes the majority rule is the underlying... But I'm trying to understand the reasoning behind the majority rule. It seems like it doesn't seem to make much sense if you don't have some evidence that people actually knew what the terms were they were being bound to. The idea flows from the basis that before any insurance is placed, the parties enter into a contract, which is in the record. A lease, you mean? On the lease, exactly. Before insurance is placed, they enter into a contract binding those parties as to who is responsible for... Are you saying the insurer just steps into the shoes of each side to that lease, not knowing what the terms are, but it's just implicit in the arrangement when you extend the insurance. You are stepping into the shoes of the obligations of the party you are insuring who is under that lease. I believe that is the common perspective, and I handle this in large commercial equipment leases such as cranes for construction of buildings that go on for years, aircraft leases, lease aircrafts, building leases, every kind of lease agreement. People are not bound by agreements that they are not parties to. If the question is which controls, because if we enter into contracts to facilitate commercial business and the argument made that somehow tort liability or CGL insurance is different and therefore the Walmart decisions don't apply, that is completely the opposite. The entire reason you enter into a commercial contract with a party allocating who is responsible for various types of losses and how to insure it is to avoid getting into a liability. You don't ever look to the liability first on a loss of property in a commercial building or equipment lease or crane lease or aircraft lease or ship lease. You look to the property insurance and how the parties designated the allocation of that risk. If for whatever reason that is not covered by the property insurance so that the parties have resolved their dispute among each other, then you may look to the CGL policy. But we are looking to the insurance policies, the liberty and the landmark policies as opposed to looking at the lease. We are looking at those two policies and suppose that we believe that the two terms are mutually inconsistent because both of them are saying they are excess insurance. Then the question really is why should we look to the lease that neither of the insurance companies signed or that we don't have evidence that they were aware of the terms of the lease. Why shouldn't we go with proration as the resolution which is fair because here we have learned that both insurance companies charge $90,000 for insurance for this property and why not prorate the amount in question here? The insurance is entirely different. The argument that they insure the same property is nonsense. We didn't insure any personal property. That is not part of our premium. They insure personal property. The BI coverage is entirely separate. It doesn't have anything to do with each other. Our mortgages and mortgagees that have rights under the policies are entirely separate. With respect to the particular damages that occurred, both policies cover those damages. I have asked the court to look at the replacement because if you are looking at these damages, the question is replacement cost coverage. Their replacement cost coverage term is entirely different than ours with regard to the principal thing that is litigated on replacement cost coverage. What is your... Is that a question down the road as opposed to now? The argument is that the carriers enter into an agreement to insure the parties with regard to... The carrier has a full right to undertake whatever auditing review that it wants to undertake. In other words, you are looking at it from the perspective that the carriers just happen to be involved in a relationship with an insured that turns out, as you say, not to know about the lease. That is not how business works. Each carrier has the ability, if they wish, to look at every underlying contract and ask any information that they want to inquire about. You are looking at an insurance dispute between two insurance companies and they each present their insurance policies. And if hypothetically we say each of them says we are only excess insurance, then we have a problem. And then we say what do we look at to resolve that mutual conflicting provisions? And then my understanding of Tennessee law was that you would prorate the amount in question. And why shouldn't we do that instead of looking at the lease? The reason you should do it is you should look toward the intent of the parties as to what they intended with regard to priority after that. Which parties are you talking about now? The landlord and tenant or the insurance companies? The insureds. The insureds. What you... What you are doing is you are contrasting as both Western District decisions have decided as contrasted to the Middle District. The Western District says when we run across a mutually repugnant, we have this prorata and therefore they are against each other. We are allowed to consider outside of the contract something that will guide us as to who is to have priority among us. And if it is clearly stated in a contract of agreement, which is commercial business, it is inherent on commercial business that they have a right to allocate this responsibility as to who has a duty to insure and for what and whether or not the other party is to be insured. The court said in both Western District decisions and frankly many decisions around the country that you look to the contracting intent of the parties. I think the better rule is the Walmart rule and the Middle District of Tennessee that said the contracting intent of the parties which precedes the insureds binds the parties as to their insureds obligations for which they are to go out and procure legally under that contract, their insureds, that that is the control against. But whether you go under the federal, the Middle District rule or the two decisions out of the Western District, you end up in the same place. We have contrasting terms within the policies. If you look at the terms of the policies, they are mutually repugnant, therefore to clarify who is obligated, you can look to the contractual intent of the parties. Or if you do the Walmart case, and the other thing I was going to throw out to the court and I don't know what my time left is, two minutes. Judge White has a question. Excuse me. I'm trying to ask a question. Your opponent has distinguished between property policies and general liability. You said there is no distinction in terms of this rule, right? There is an endless myriad of distinctions between CGL policies and property policies. I'm not saying. With respect to this rule of allocating according to the contract. Correct. With regard to allocating with regard to the contract. So do you have cases that applied this rule that looks to the underlying arrangement between the insureds? Do you have any that have arisen in the property insurance context? Well, the two, all the underlying district court cases that are before this court that everybody is citing are all property policies. So in the Walmart case, was there any knowledge by the insurers of the underlying CGL policy? Was there anything in that case to show that they had some knowledge that that was relevant to the court's decision? I can't remember off the top of my head. I don't want to say that it was or it wasn't. I don't recall it being relevant in that case. It seems like if you are insuring against an indemnity in a contract, you are insuring an insured who has made an indemnity agreement, you wouldn't necessarily know what the indemnity agreement was because that is what you are insuring against. So it seems like probably in that context at Walmart, I got to think the insurers would have known what the underlying indemnity agreement was. Well, as I have said, if you are an underwriting insurer and you are asked to only insure the owner, that tells you that your owner has no legal responsibility to insure under any contract to insure the tenant. If you are the tenant's lessee insurance and you underwrite for a commercial tenant and that tenant says, I am required under my contract to provide additional insurance for this owner and to give them a certificate of insurance evidencing the fact that I have in fact done that, it tells you the underlying elements of the contract that I am talking about. One does not require it and therefore as a commercial owner, which is standard in most commercial leases, the owner does not have a duty to carry the tenant and in commercial categories of leases, ship, cranes, equipment, aircraft, commercial buildings, the tenant has commonly the duty and when the insurance company says, okay, I understand because they always disclose and their policy discloses what you are operating is, you are operating as a manufacturer, you don't own the building, you are obligated to obtain this insurance for the benefit of the owner and provide AI insurance, that is not done simply because you are being a nice guy. You don't go out and name someone as an additional insured and provide a certificate of insurance because it is a polite thing to do. You do it because it is your contractual obligation to do so. You would say the same thing, the same result would be obtained if there were a fire caused by electrical wiring short that created a fire because they failed to maintain the building, exactly. The same exact situation. What if it was something unrelated to what the landlord, I'm sorry, to what the tenant did? Well, first of all, so we correct the record, the tenant, when she says there was nothing correlative between the parties that were involved in the theft and the tenant, I don't know what she is talking about. The tenant was in financial distress, it arranged for the sale of its assets, a party was contracted to sell the tenant's assets, they engaged these parties that resulted in the theft. The landlord is not even on the property, the landlord has nothing to do with this. This is all the tenant's responsibility. I'm saying what if there were a loss that was not related to the tenant's activities? Do you take the same position? It depends, your honor, it depends upon what the loss was. Here, they were required to insure the totality of the premises for 100% full value. So there is no loss that is not responsible for the tenant. But I'm asking, let's say somebody came in unrelated to the tenant and set a fire to the building. Well, that is the security responsibility of the tenant to maintain the security of the property and keep it from being on fire. But the point on the tort issue I want the court to understand is, if you only reach a liability under tort law with regard to legal responsibilities, if you and I have not decided that for the damage to the building because a forklift backed up too far and damaged the wall of the building, which is clearly negligence, that I, on behalf of you and me, are going to insure that damage with party A, insurance company A. When we do that, you, who own the building, who just got your wall knocked down, don't have a right to sue me because I have a right and will always look to the property insurance first to make good that responsibility. Your time is well expired. Thank you very much. I just want to briefly respond to a couple of points, Your Honors. First of all, the only two cases any party has identified in which the court looked to the underlying agreement that involved property insurance policies are the Fireman's Fund and the RBP cases from the Tennessee District Courts. In those cases, both followed the Wal-Mart decision and I would argue that they should not have followed the Wal-Mart decision because Wal-Mart involved CGL insurance and they were dealing with property insurance. Second, I wanted to point out that there are two federal courts of appeal that have rejected the idea that you should look to an underlying lease agreement. First, the Fifth Circuit in the Southern Insurance Company case, 830 F-3rd, Federal 3rd, 337. In that case, the Fifth Circuit said that nothing about the other insurance clauses in either policy was ambiguous, so there is no way that they should have even considered anything extrinsic in the first place. In any event, the lease did not illuminate which policy was intended to be primary. It did not address priority of coverage of the insurance policies and that is the same case here, Your Honor. The underlying agreement does not address priority of the insurance policies. It does not supply a priority rule. Also, the Tenth Circuit in Philadelphia Indemnity Insurance Company v. Lexington, 845 F-3rd, 1330. In that case, the court said that the insurance policies, not the lease, control and to look to the lease effectively would allow the lease to amend the policy to delete the other insurance clause. I would argue that is what the district court did here and allowed the underlying lease to amend the policy, which Tennessee law does not allow. Were all these coverages in the same policy? Which coverages, Your Honor? For the tenant, was there one policy? Was the commercial general liability policy also part of the property policy? That is a good question. I don't believe so, Your Honor. I'm not completely sure, but I don't believe so. You didn't cover all the risks? I don't think so. If nobody else has any other questions, that's all I have. Thank you, Your Honor. Thank you. Thank you both for your argument and the case will be submitted.